### Ligon v. Smith, et al.

(Decided October 11, 1910.)

### Appeal from Graves Circuit Court.

Signature to Note—Genuineness Thereof—Evidence Considered.—The question in this case is whether the note sued on for $1,500.00 alleged to have been signed by the deceased wife of the plaintiff in payment of money owing by her to him. Held, that witnesses familiar with and who knew the characteristics of her writing, and friends with whom she had corresponded, all declare the signature genuine, and there being no incentive for him to have forged the signature, we think the note is genuine, though the special circuit judge who tried the case in the lower court held it was not genuine.

W. P. LEE for appellant.

W. M. SMITH and W. J. WEBB for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Mrs. Emma Ligon, the wife of the appellant John G. Ligon, became the owner by inheritance of an undivided interest in a house and lot in Mayfield, the other interests being owned by her two brothers and a sister. She bought the shares of the two brothers. Her husband furnished the money that paid for them, which was $1,300.00. Mrs. Ligon was then in delicate and failing health. She had no children. Appellant claims that she executed to him her note for $1,500.00 in settlement of the $1,300.00 above noted, and $200.00 to cover an earlier transaction between them. After Mrs. Ligon's death her husband remained in possession of the property, holding it until dower was allotted him. This suit was brought to sell the property, because of its indivisibility, and out of the proceeds to pay the husband the present value of his life expectancy in the dower, and to divide the remainder among Mrs. Ligon's heirs-at-law. Appellant contended that his note of $1,500.00 should also be paid out of the proceeds of the sale, before it was divided among the heirs. The latter or rather the two brothers, assail the note as not being the act and deed of Mrs. Ligon. A number of witnesses, experts, testified that in their opinion the signature was not the handwriting of the person who signed certain genuine documents in evidence in the case. Their testimony was based upon a supposed dissimilarity in the writing, and to some extent, but mainly upon their belief that the signature in dispute was not written either with a pen and ink, or with a lead pencil, but that it was an impression from a carbon paper made by tracing or writing the name upon other paper above the carbon and the note on which it was placed. This testimony is divisible into groups. One of those who by comparison undertook by a kind of analysis to distinguish between the genuine and the disputed writings, and the other, of those who claimed that the disputed signature was made by an impression upon carbon paper. Of the first class it is enough to say that when they give their reasons for declaring the disputed signature to be spurious, they are not borne out by the facts. Mrs. Ligon did not always form her letters in the same way. The genuine signatures examined by the experts differed in some features from the disputed. But other genuine signatures brought into the record disclose that Mrs. Ligon did sometimes make the letters in question

precisely as was done in the signature in question. We do not regard the opinions of the experts very highly on that score. The matter seems simple enough, as we have all the original papers bearing the signatures before us, that the court feels warranted in forming and relying on its own opinion as to handwriting.

The signature was not in ink. Whether it was by lead pencil, or by carbon impression, is not so clear, nor does it matter if Mrs. Ligon wrote it. Witnesses familiar with her writing, and her intimate friends with whom she corresponded, and who knew the characteristics of her writing, unhesitatingly and emphatically declare the signature genuine. There was little motive for appellant to have forged the signature, and none apparently for anybody else to have done it. Mrs. Ligon was clearly indebted to her husband for $1,300 advanced for her. In view of her failing health and childless state, it was natural for her to have given her husband an evidence of debt, expressing the truth, by which he would be re-imbursed from her estate what he had put into it for her, before it was distributed to strangers to his blood. Mr. Ligon is a man in comfortable circumstances, engaged in a profitable business, and there appears no incentive for him to have forged the note. The circumstances negative the suggestion that he has criminally fabricated his deceased wife's signature to take $200 from her estate.

The special circuit judge decided that the note was not genuine. We think the evidence shows otherwise.

Reversed, and remanded for judgment in conformity herewith.